UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUNICE WELLS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 00-0760-LFO |
| ) | |
| ALLSTATE INSURANCE CO., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OPINION**

The parties have settled this class-action suit and now move for court approval of the settlement agreement, as required under Federal Rule of Civil Procedure 23.  *See* Motion for Final Approval of Class Action Settlement [dkt # 242].  Class counsel also move for approval of attorneys' fees, costs, and incentive awards to the named plaintiffs.  *See* Joint Petition of Class Counsel for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Class Plaintiffs ("Joint Pet.") [dkt # 241].  For the reasons discussed below, both motions will be granted.

**I.  BACKGROUND**

In 1998, Plaintiff Eunice Wells, a policyholder of Defendant Allstate Insurance Company, was hit by a car while crossing the street.  She sought to recover for her injuries under her Allstate uninsured-motorist coverage.  After Allstate refused to settle, Wells sued Allstate in the District of Columbia Superior Court for benefits.  She also moved for certification as representative of a class claiming injuries from Allstate's alleged violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. § 28-3901 ("Consumer Protection Act" or "Act").  Among other things, the Act creates liability for "failure to state a

material fact if such failure tends to mislead." *Id.* § 28-3904. Wells alleged that Allstate's violations included failing to disclose that it resisted paying on uninsured-motorist claims, and that it adopted a "scorched-earth litigation tactic" against policyholders who litigated after refusing to settle.

Allstate removed the case to this court. Wells settled her personal-uninsured-benefits claim, but her class claim under the Consumer Protection Act proceeded. Plaintiffs' amended complaint alleged that, if uninsured-motorist claimants were represented by counsel, Allstate referred their claims to a special unit, which, as a tactic, deliberately and regularly took far more time to pay than Allstate took to pay claimants who did not have counsel. On May 17, 2002, this court denied Allstate's Motion for Summary Judgment.

On August 12, 2002, this court certified a class of Allstate policyholders to include those who "(1) between March 20, 1997 and October 19, 2000, (2) made a claim for uninsured motorist benefits which Allstate paid in part or in full, (3) for, *inter alia*, bodily injury, and (4) at some or all points during the claims process were represented by counsel." This class was limited to policyholders who made claims before October 19, 2000, the effective date of an amendment to the D.C. Consumer Protection Act. This amendment made it easier for consumers to sue by eliminating certain requirements of injury-in-fact and causation. The Court of Appeals for the District of Columbia dismissed Allstate's appeal from the certification.

In April 2003, Plaintiffs moved to join Charles Rawlings as a party plaintiff and to expand the class to include policyholders who, like Rawlings, had filed uninsured-motorist claims after the Act's October 2000 amendment. In October 2004, Plaintiffs moved to qualify Rawlings as a class representative. In November 2004, Allstate moved for summary judgment

on Rawlings's claims, arguing that he waived those claims by signing a general release. On January 24, 2006, this court denied Allstate's motion, concluding that Rawlings did not waive his claims. On July 6, 2006, the court issued an order qualifying Rawlings as a class representative and amending the class definition to extend the time period for which claims were filed: the class now includes Allstate policyholders or beneficiaries who made an uninsured-motorist claim between March 20, 1997, and July 6, 2006, and otherwise meet the original class definition. In March 2007, the parties began mediation before Jonathan Marks, a mediator with extensive experience in complex litigation.

The mediation culminated in a settlement agreement stating that the approximately 1,200 class members would receive a total of $800,000. Settlement Agreement [dkt # 234-2]. Each class member would receive one of three cash amounts—$150, $600, or $1,200—depending on the length of time it took to receive payment on his or her claim:

| Days Between Loss Report and Claim Payment | Amount of Settlement Payment |
| --- | --- |
| 0 - 180 days | $150 |
| 181 - 635 days | $600 |
| 635 + days | $1,200 |

*Id.* ¶ 6(A). Additionally, Allstate agreed not to oppose class counsel's request for $700,000 in fees and $25,000 in costs, to be awarded at the court's "sole discretion." *Id.* ¶ 5(A). Finally, under the agreement, the two named class plaintiffs receive an additional "incentive award" of $10,000 each. *Id.* ¶ 6(B).

On December 18, 2008, counsel for both parties presented their Settlement Agreement to the court for preliminary approval. On January 7, 2008, the court issued an order granting such

approval. The parties then issued notice to the class members of the proposed settlement and of the final settlement hearing. In addition to stating the terms of the $800,000 class settlement noted above, the notice stated that class counsel would request court approval of awards of $700,000 for attorneys' fees, $25,000 for costs, and $10,000 for the two named plaintiffs. No objections were filed. Only one member of the class, Ms. Donna Ridley, also known as Donna Ridley Ramrattan, has requested exclusion from the class and the settlement (and is therefore not a member of the class). On May 13, 2008, Judge Thomas F. Hogan presided over the final settlement hearing. At the conclusion of the hearing, Judge Hogan stated his recommendation that this court approve the settlement award to the class members, the incentive awards to the named plaintiffs, and—subject to further consideration—the award for attorneys' fees and costs. On May 16, 2008, at Judge Hogan's request, class counsel filed documents detailing the time and expense costs previously summarized in support of their motion for approval of fees and costs.

## II. DISCUSSION

This court must address three items: (1) the award to class members ($800,000 total); (2) the attorneys' fees and costs ($725,000 total); and (3) the incentive awards to the two named plaintiffs ($10,000 each). As discussed below, each of these amounts are reasonable in the context of this unique case and will be approved.

**A.     The $800,000 Award to Class Members**

Under Federal Rule of Civil Procedure 23, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Approval of the proposed class action settlement lies within the discretion of this Court." *Livengood Feeds, Inc. v. Merck KgaA (In re Vitamins Antitrust Litig.)*,

305 F. Supp. 2d 100, 103 (D.D.C. 2004). "The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements." *Id.* "The Court must eschew any rubber stamp approval . . . yet, at the same time, must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.* (citation omitted). "The exercise of this discretion, however, is constrained by the 'principle of preference' favoring and encouraging settlements in appropriate cases." *Id.*

"There is no single test in this Circuit for determining whether a proposed class action settlement should be approved under Rule 23(e)." *Id.* "Generally, in determining whether settlement should be approved, courts consider whether the proposed settlement is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued." *Id.* "In making this determination, courts in this Circuit have examined the following factors: (a) whether the settlement is the result of arm's length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the status of the litigation at the time of settlement; (d) the reaction of the class; and, (e) the opinion of experienced counsel." *Id.* As noted below, these factors weigh in favor of approving the settlement award to the class here.

*Arms' length negotiations.* Experienced class counsel litigated this case for nearly eight years before settlement was reached through mediator Jonathan Marks. Marks is an experienced mediator, and he has provided a declaration that the settlement was reached through arms' length negotiation. Marks Decl. ¶¶ 17, 20 [dkt # 241-7] (concluding that the settlement is "fair and reasonable" and stating that "[c]ounsel for each Party were effective advocates for their clients and effective participants in the effort to reach a settlement that fairly valued the risks and

opportunities of each Party in the litigation"). "Because there is nothing in the course of the negotiations or the face of the Settlement that 'discloses grounds to doubt its fairness,' the Court finds that the Settlement at issue was the result of arms' length negotiations and is thus presumptively fair, adequate and reasonable." *Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (citing Manual for Complex Litigation (Third), § 30.41 (1995)).

   ***Terms of the settlement.*** Allstate is alleged to have a nefarious policy that is a grave insult to the legal profession. As noted, each of the approximately 1,200 class members will receive, from a total fund of $800,000, cash payments of either $150, $600, or $1,200.

   Additionally, trial would have been costly, and the case "would have undoubtedly continued" through the appeals process after a trial. Joint Pet. at 8. Counsel further state that bringing this suit under the D.C. Consumer Protection Act was a novel approach: "It is also indisputably true that no other reported case reflects an attempt to use the protections of the [Act], on either an individual or class-wide basis, to pursue a recovery for injured policyholders who were penalized simply because they had decided that they needed assistance of counsel in pursuing their insurance claims." *Id.* at 13. Moreover, the payment is *in addition to* any payment that class members might have obtained under the terms of their individual policies. *See* Joint Pet. at 9. In sum, in light of the uncertainties of litigation, these cash payments are fair and reasonable.

   ***Status of litigation at settlement.*** The settlement agreement is the result of years of litigation, but neither party has yet to face the time and expense of trial (or the inevitable appeal). Accordingly, the settlement has "not come too early to be suspicious nor too late to be a waste of resources." *Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105.

***Reaction of class to settlement.*** No objections have been filed to the proposed settlement, and only one person has chosen to opt out.

***Opinion of experienced counsel.*** "Although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the [settlement was] reached after several months of arms' length negotiation by experienced counsel and that both counsel and all parties involved view the settlements as reasonable." *Id.* at 106. Further, the case went through extensive mediation, and the experienced mediator believes that the settlement is fair and reasonable.

*       *       *

Accordingly, the court will approve the settlement for the class members.

**B.    Attorneys' Fees and Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel request approval of $700,000 in fees, $25,000 in costs, and $10,000 for each of the named plaintiffs. The Settlement Agreement provides that Allstate does not object to such approval.

    **1.    The $700,000 For Attorneys' Fees**

"In general, each party to litigation in the United States bears its own attorneys' fees absent a specific fee-shifting statute." *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265 (D.C. Cir. 1993). "Over time, courts have fashioned several equitable exceptions to this 'American rule.'" *Id.* "One of the earliest, and still most common, exceptions is the 'common fund' doctrine typically applied in class actions like the present one." *Id.* "That doctrine allows a party

who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Id.* "It is by now well established that 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Id.* (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "The underlying justification for attorney reimbursement from a common fund . . . is that unless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." *Id.*

"Courts have a duty to ensure that claims for attorneys' fees are reasonable." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *7 (D.D.C. June 16, 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Swedish Hosp.*, 1 F.3d at 1265). "Proponents find the percentage-of-recovery method attractive 'because it directly aligns the interests of the Class and its counsel and it provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system.'" *Id.* (quoting *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 431–32 (S.D.N.Y. 2001)). Yet "special problems exist in assessing the reasonableness of fees in a class action suit since class members with low individual stakes in the outcome often do not file objections, and the defendant who contributed to the fund will usually have no interest in how the fund is divided between the plaintiffs and class counsel." *Id.* at *7 n.9. Fee awards in common-fund cases may range from fifteen to forty-five percent. *Id.* at *7. By way of comparison, "the normal range of fee recovery in antitrust suits is twenty to thirty percent of the common fund." *Id.*

Courts look to several factors when evaluating fee requests under the percentage-of-recovery method, including the following:

(1) the size of the fund created and the number of persons benefitted;

(2) the presence or absence of substantial objections by members of the class to the settlement terms or fees requested by counsel;

(3) the skill and efficiency of the attorneys involved;

(4) the complexity and duration of the litigation;

(5) the risk of nonpayment;

(6) the amount of time devoted to the case by plaintiffs' counsel; and

(7) the awards in similar cases.

*Id.* at *8; *see also Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007) (relying on these factors).

Here, counsel concede that the $700,000 fee requested—45% of the total recovery—"is toward the high end of the range of percentages generally awarded by courts." Joint Pet. at 8. Applying the applicable factors, as shown below, reveals that the requested fee is nonetheless reasonable in this unique case.

***Size of the fund and class.*** As noted, the settlement provides that $800,000 will be shared among 1,191 class members. Each class member will receive $150, $600, or $1,200. These payments are in addition to any recovery that class members may have obtained under their individual policies. Moreover, cash payments further enhance the value of the settlement. *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *17 (E.D. Pa. June 2, 2004). Additionally, the fund from which attorneys' fees and costs reimbursements will

be paid has been negotiated separately by class counsel only after the creation of the settlement fund for the class. Joint Pet. at 9. Thus, class counsel's "'requested fee does not diminish recovery by the Settlement Class.'" *Id.* at 9–10 (quoting *Cohen*, 522 F. Supp. 2d at 122) (alterations omitted). In short, each class member will receive significant value from this settlement. *Cf. Cohen*, 522 F. Supp. 2d at 122 (class of two million consumers and common fund of $8.3 million).

*Objections.* As noted, no class member has objected to the settlement, including the provision for attorneys' fees. And, of course, Allstate—who will pay the fees—also has no objection.

*Attorney skill and efficiency.* This litigation involved experienced class counsel who successfully navigated this case to this stage. Counsel brought the unique D.C. Consumer Protection Act claim, obtained class certification, broadened the class through discovery and litigation, and negotiated the case to this successful resolution. Allstate vigorously contested each of these developments.

*Complexity and duration of litigation.* In addition to the points noted above, class counsel emphasize that bringing this sort of suit was not only complex, but also novel. As they note, no other reported case reflects this type of attempt to bring suit under the Act for allegations related to a defendant's mistreatment of policyholders based on the way they pursued their insurance claims. Joint Pet. at 13.

*Risk of nonpayment.* Class counsel "undertook this case on a purely contingent basis." *Id.* "The risk of nonpayment through either an award of summary judgment or loss at trial was significant and real in this case." *Lorazepam*, 2003 WL 22037741, at *8. Counsel accurately

note that "[t]here were many factors that could have eliminated any chance of recovery in this case[,] including the rejection of Class Counsel's novel theory of liability, the risks associated with establishing damages on behalf of the Class members, or the denial of class certification." Joint Pet. at 13. Indeed, counsel have yet to be paid any fees for this litigation.

*__Time devoted.__* Class counsel state that they have expended approximately 3,100 hours since the initial hearing on class certification in May 2002. The collective lodestar for class counsel, calculated at their customary hourly rates, totals $1,278,432. This is further evidence that their request for approval of $700,000 in fees is reasonable. *See Lorazapem*, 2003 WL 22037741, at *9 (noting that a fee award that is 1.15 or 1.36 times *greater* than the lodestar "falls near the low end of normal multipliers" and that "multiples ranging up to four are frequently awarded in common fund cases when the lodestar method is applied") (internal quotation marks omitted); *Cohen*, 522 F. Supp. 2d at 123 n.4.

*__Similar cases.__* As noted, class counsel concede that their fee request "falls at the high end" of the fee percentages recognized for common-fund cases. Joint Pet. at 14. The court agrees, however, "that the factors identified in [their] Joint Petition support the requested fee and demonstrate that Class Counsel have obtained an admirable recovery for the Class in an extremely difficult and challenging litigation against an opponent represented by first-rate counsel with virtually unlimited litigation resources." *Id.*

*__Public interest.__* Though the public interest is not always named as a separate factor in the fee-award determination, it is also worth serious consideration. *Cf. Burka v. U.S. Dep't of Health and Human Servs.*, 142 F.3d 1286, 1292 (D.C. Cir. 1998) (Wald, J., concurring) (noting that courts evaluate the public benefit under fee-shifting statutes "all the time"). Here, the settlement

serves the public interest not only by conserving the resources required of further litigation, but also by sounding a cautionary note to the insurance industry: policyholders must be treated fairly.

*          *          *

In sum, class counsel achieved class certification and ably prosecuted a unique theory of liability for this consumer class; assumed a substantial risk of nonpayment over years of contested litigation; achieved a settlement amounting to significant cash recoveries of $150 to $1,200 for each class member; demonstrated that their requested fee award is significantly less than the lodestar; received Allstate's agreement to the requested fee award; negotiated the fee award separately from the class fund; and received no objections from the class to the requested fee award. Under these unique circumstances, class counsel are entitled to their requested fee award of $700,000.

### 2.     The $25,000 in Litigation Costs

"In addition to being entitled to reasonable attorneys fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *Lorazepam*, 2003 WL 22037741, at *10. Counsel have filed affidavits and supporting documents showing that they incurred $28,629.61 in litigation costs and expenses since the class-certification hearing in May 2002. *See* Affidavits of Class Counsel [dkt ## 241-3 to 241-6]; Summary Sheets of Time and Expenses [dkt ## 243-2 to 243-4]. Counsel request approval of $25,000 in costs, to be paid by Allstate. Allstate has no objection to this request. The court concludes that this request—a small piece of the overall settlement—is reasonable.

### C.     The $10,000 Incentive Awards For the Named Plaintiffs

"This Court has . . . determined that incentive awards to named plaintiffs are not uncommon in class action litigation, particularly where a common fund has been created for the benefit of the entire class." *Lorazepam*, 2003 WL 22037741, at *10. Indeed, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (internal quotation marks omitted). "The propriety of allowing modest compensation to class representatives seems obvious." *Id.* (internal quotation marks omitted). "In deciding whether to grant incentive awards and the amounts of such awards, courts consider factors such as 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation.'" *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, class counsel request that this court grant $10,000 each to Eunice Wells and Charles Rawlings as incentive awards to compensate them for their contribution to the settlement achieved in this case. Class counsel state that "plaintiffs Wells and Rawlings have devoted their time and effort to assist in the prosecution of the Action that has produced this recovery for the benefit of the Class." Joint Pet. at 17. They both were deposed (Wells was deposed twice). Wells also attended the two-day class-certification hearing. Additionally, both produced documents and assisted in responding to interrogatories. No objection to their incentive awards has been filed. In short, "[t]he additional payments to the named Plaintiffs are reasonable in light of their investments of time, money, and effort on the part of the class." *Lorazepam*, 2003 WL 22037741, at *11 (approving $20,000 incentive awards to named plaintiffs).

13

## III.  CONCLUSION

For the foregoing reasons, the court shall grant (1) Motion for Final Approval of Class Action Settlement [dkt # 242] and (2) Joint Petition of Class Counsel for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Class Plaintiffs [dkt # 241]. Orders granting those motions accompany this Memorandum Opinion.

/s/
Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

Dated: May 28, 2008